**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ARMIS ARRENDONDO, ) | |
| ) | 3:11-cv-00704-RCJ-VPC |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| D. BROOKS, *et al.*, ) | |
| ) | |
| Defendants. ) | September 23, 2013 |
| _____) | |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#23).[1] Plaintiff opposed (#30) and defendants replied (#31). As there appeared to be some delay in plaintiff's receipt of notice that the court granted his motion to extend prison copywork limit (#29), plaintiff filed a notice of errata and answer to defendants' reply (#34).[2] The court has thoroughly reviewed the record and recommends that defendants' motion for summary judgment (#23) be granted.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Armis Arrendondo ("plaintiff"), a *pro se* inmate, is currently incarcerated at Southern Desert Correctional Center in the custody of the Nevada Department of Corrections ("NDOC") (#6). On September 28, 2011, plaintiff filed a civil rights complaint pursuant to 42

---

[1] Refers to the court's docket numbers.
[2] Plaintiff explains in this document that he provides evidence that he was unable to include with his reply until his motion to extend copywork limit was granted.

-1-

U.S.C. § 1983, alleging mainly that several defendants at Ely State Prison ("ESP") violated his First, Eighth and Fourteenth Amendment rights as well as his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") (#6). The court screened the complaint pursuant to 28 U.S.C. § 1915A, and permitted the following claims to proceed: count III against defendant correctional officer Curtis Rigney ("Rigney") for violation of plaintiff's First Amendment and RLUIPA rights; counts III and VI against defendants Rigney and correctional officer Corey Rowley ("Rowley") for violation of his First Amendment right to access to the courts; and count V against defendant Rigney for violation of plaintiff's Eighth Amendment rights (#5, pp. 6-9).

Plaintiff alleges the following: when he was transferred to ESP in October 2010, Rigney conducted the search and inventory of plaintiff's property and escorted plaintiff as he moved it from the ESP property room (#6, p. 6). Rigney confiscated several of plaintiff's personal legal and religious books without a pre-deprivation hearing, stating that they did not have plaintiff's name written inside. Plaintiff was unable to file his direct appeal in his underlying criminal case without the legal books. With these actions, Rigney violated plaintiff's First Amendment rights to religious liberty and to access to the courts, and his rights under RLUIPA. *Id*. at 6-7.

Rigney then accompanied plaintiff as he moved his remaining property to his cell. *Id*. at 6F. Rigney was aware that plaintiff had "sustained numerous injuries" and used a walking cane. Nevertheless, Rigney forced plaintiff to push, pull or tug a 250-pound steel cart that weighed approximately 400 pounds once loaded with his property. The strain caused plaintiff's hernia to rupture, causing severe pain (and for which he will require surgery). Rigney acted intentionally to cause plaintiff unnecessary and wanton pain and suffering, in violation of plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. *Id*. at 6F, 6G.

Next, plaintiff alleges that he was in the middle of completing his direct appeal in his criminal case when Rowley confiscated 70 pounds of legal work from his cell. *Id.* The materials were later returned but the deadline for plaintiff to file his opening brief had passed. As compensation for defendants' actions, plaintiff requests in excess of $75,000.00 in compensatory damages, punitive damages, and injunctive relief directing that NDOC medical personnel provide "necessary medical treatment." *Id.* at 8-9.

Defendants allege the following: on November 4, 2010, Rigney inventoried plaintiff's property upon his transfer to ESP, per prison policy, and confiscated several books that belonged to another inmate (#23, p. 2; Ex.'s A and C). He gave plaintiff the unauthorized property forms. Plaintiff told Rigney that he could not use the wagon-like cart to move his property due to an injury, and Rigney informed plaintiff that he could not move the property for plaintiff without a note from medical. Rigney offered to secure plaintiff's property in the property room until plaintiff obtained the medical documentation. Plaintiff declined and proceeded to move his property himself without any visible difficulty or pain. *Id.*

Next, defendants allege that on January 14, 2011, Rowley and another officer searched plaintiff's cell (#23, p. 2; Ex.'s B and D). Rowley found a laundry bag filled with miscellaneous papers, which plaintiff appeared to be using as resistance to perform weight-training exercises, in violation of ESP policy. The bag of papers was confiscated, and plaintiff received the appropriate notification forms. On March 1, 2011, the forms from the bag were returned to plaintiff. *Id.*

Defendants now move for summary judgment on the basis that insufficient evidence exists for a reasonable juror to conclude that plaintiff can prove any of his allegations by a preponderance of the evidence (#23 at 4). Defendants attach several documents to support the motion for summary judgment, including: (1) the declaration of Curtis Rigney, signed under penalty of perjury (#23, Ex.

-3-

A); (2) the declaration of Corey J. Rowley, signed under penalty of perjury (#23, Ex. B); (3) the two relevant NDOC unauthorized property notification forms (#23, Ex.'s C and D);[3] (3) medical records for plaintiff filed under seal (#24);[4] and (4) the Nevada Supreme Court's order affirming the denial of plaintiff's motion to withdraw a guilty plea in his criminal case (#23, Ex. H).

Plaintiff opposed (#30). He submits his declaration, signed under penalty of perjury, and contends the following: he could have verified his ownership of the books that Rigney confiscated if he had been given the opportunity. The normal "wagon-like" carts for transporting property were not available and he had to use a much heavier "steel heavy duty rail road type cart." *Id*. at 2. Plaintiff did not reveal to Rigney that he was in great pain because he did not want to give Rigney "the pleasure of knowing the hernia tore." *Id*. Plaintiff reported his injury via institutional grievance on November 14, 2010, and G. Martin, APN, examined plaintiff's ruptured hernia that day (*id*. at 6; #34 at 57). When Rowley confiscated plaintiff's legal work he was unable to file a timely opening brief before the Nevada Supreme Court, which then affirmed his wrongful conviction (#30, p. 4).

The court is aware that plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

---

[3] Authenticated by the declaration of Ira Hollingsworth (#23-1, Ex. E, pp. 1-2).
[4] Authenticated by the declaration of Scherrie Clinkscales (#23-1, Ex. G).

-4-

## II.  DISCUSSION & ANALYSIS

**A.    Legal Standards**

   **1.  42 U.S.C. § 1983**

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999).  Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere.  *Albright v. Oliver,* 510 U.S. 266, 271 (1994).  To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

   **2.  Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B.     Analysis**

Defendants contend that they are entitled to summary judgment in their favor because plaintiff has adduced no evidence that would permit a reasonable trier of fact to find that he can prove his claims by a preponderance of the evidence, and the direct and circumstantial evidence that

defendants have presented demonstrates that these alleged violations of plaintiff's civil rights never occurred (#23, pp. 4-5).

**1.     Count V**

Plaintiff alleges that Rigney "forced" plaintiff, with his hands cuffed behind his back, to pull a cart of his property that weighed 400 pounds, causing his hernia to rupture (#6, p. 6F; #30, p. 2). Plaintiff contends that Rigney knew plaintiff was in a "fragile condition that could easily result in permanent paralysis if re-injured" and that Rigney "maliciously and sadistically attempted to cause plaintiff to injure himself" in violation of plaintiff's Eighth Amendment rights (#6, p. 6F). Defendants offer Rigney's sworn declaration, which states the following: when plaintiff told him he could not move the cart due to injury, Rigney informed plaintiff that a corrections officer could not move the property without a note from medical and offered to secure plaintiff's property in the property room until plaintiff could get the medical documentation (#23, Ex. A). Plaintiff declined and proceeded to move his property with no apparent difficulty. *Id*.

In his opposition to the summary judgment motion as well as in his sworn declaration, plaintiff states that he reported his injury via grievance and that APN G. Martin examined him on November 14, 2010, but told him that the hernia was not life-threatening and did not require immediate surgery (#30, p. 1; #34, Ex. 7, p. 1).

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  With respect to claims of deliberate indifference to plaintiff's safety, "[p]rison officials have a duty to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982); *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005); *Robinson v.*

*Prunty*, 249 F.3d 862, 866 (9th Cir. 2001). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferen[t]" to serious threats to the inmate's safety. *See Farmer*, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837; *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1187-88 (9th Cir. 2002); *Jeffers v. Gomez*, 267 F.3d 895, 913 (9th Cir. 2001) (per curiam); *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *See Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

Here, plaintiff's allegations of deliberate indifference are belied by the records that both he and defendants provide. Plaintiff submitted a medical kite on November 7, 2010, three days after he moved his property to his cell (#34, Ex. 8; #24). In that kite, he mainly asks for a second mattress and for officers to be directed to use two handcuffs behind his back so that he can "ambulate to and from the shower." While he also references myriad previous injuries, including a "hernia that keeps getting bigger and is protruding from abdomen area," he never states that his hernia just ruptured from pulling a heavy wagon. *Id*. Defendants filed, authenticated and under seal, plaintiff's medical kites from January 13, 2010 through April 4, 2012 (#24). While plaintiff's medical records reflect that he arrived at ESP with a hernia and that he frequently receives ibuprofen for unspecified pain, nothing in his records reflects that he reported or was diagnosed with a ruptured hernia. *Id*. Plaintiff's assertion that he immediately notified medical of the ruptured hernia, as discussed above,

is belied by the kite that plaintiff himself provided as support for this claim.  Further, plaintiff has provided no documentation to support his allegation that APN G. Martin examined him on November 14, 2010, nor is such an examination reflected in the authenticated medical records defendants provide.

The court concludes that, based on Rigney's sworn declaration stating that he told plaintiff he could leave his property in the property room until he obtained medical documentation and that plaintiff then pulled the property cart with no apparent difficulty whatsoever, combined with plaintiff's lack of evidence and mischaracterization of what evidence he provides, no genuine dispute of material fact exists.  Plaintiff has failed to rebut evidence presented by defendants that Rigney did not act with deliberate indifference to a serious risk to plaintiff's safety in violation of his Eighth Amendment rights.  Accordingly, summary judgment should be granted in favor of defendants on Count V.

### 2. **Count III**

Plaintiff alleges that, when conducting an inventory of plaintiff's property upon his transfer to ESP, Rigney confiscated several religious and legal books, in violation of plaintiff's Fourteenth Amendment due process rights as well as his First Amendment and RLUIPA rights.  In seeking summary judgment, defendants first argue that the evidence demonstrates that the books belonged to another inmate and that they had been altered, in violation of ESP policy.  Thus, they contend that plaintiff had no property interest in the books and cannot have suffered a violation of his Fourteenth Amendment due process rights.  Second, defendants argue that the policy prohibiting inmates from possessing property that belongs to another inmate clearly serves a legitimate penological interest, as well as a compelling government interest, and is not restrictive of religious liberty, thus satisfying First Amendment and RLUIPA religious liberty safeguards.

**Fourteenth Amendment Due Process**

Under the Due Process Clause of the Fourteenth Amendment, "[p]risoners . . . may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). A valid due process claim has three prerequisites: (1) the deprivation, (2) of a liberty or property interest, (3) by officials acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 536-37 (1981). To prevail on a claim of deprivation of property without due process of law, a plaintiff must first establish the existence of a protected property interest. *Tellis v. Godinez*, 5 F.3d 1314 (9th Cir. 1993). "To have a property interest in a benefit, per person clearly must have more than an abstract need or desire for it . . . [The person] must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Here, in his sworn declaration in support of defendants' motion, Rigney states that while conducting an inventory of plaintiff's property, he confiscated several items that he determined to be unauthorized pursuant to ESP policy (#23, Ex. A). Defendants also attach the unauthorized property notification, on which Rigney noted that the items he confiscated included "6 books belong [sic] to another inmate + altered" (#23, Ex. C). Plaintiff acknowledges in his complaint that his name was not written in the books, per ESP policy (#6, p. 6), but claims that he could have proved that he owned the books (#30, p. 3). The court notes that the books are never identified by plaintiff or defendants beyond "legal and religious books." Plaintiff attached an affidavit from a non-incarcerated friend who states that in general he purchased books for plaintiff and sent them to plaintiff, as well as a "Textbooksnow-Amazon" receipt for a book entitled "Evidentiary Foundations"—a book that appears to be legal in nature (#30, Ex. 4; #34, Ex. 6). Yet plaintiff provides no evidence to support his contention that the six books in question were indeed his. In any event, the court need not inquire as to the ownership of the books. Even assuming that the books

belonged to plaintiff, without his name in them as required, they appeared to prison personnel to be subject to confiscation as unauthorized property.  As discussed below, the policy on unauthorized property serves a legitimate penological interest, a compelling government interest and is not restrictive of religious liberty.  Therefore, the policy does not run afoul of First Amendment or RLUIPA religious rights.

**First Amendment and RLUIPA**

With respect to the First Amendment, convicted prisoners do not lose their constitutional right to freely exercise their religion by virtue of their incarceration.  *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972).  However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)).  A prisoner's right to freely exercise his or her religion is necessarily limited by incarceration, and may be curtailed to achieve legitimate correctional goals or to maintain prison security.  *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam).

To merit protection under the Free Exercise Clause, a prisoner's religious claim must satisfy two basic criteria.  *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981).  First, the prisoner's proffered belief must be "sincerely held."  *Id.*  Second, the claim must be "rooted in religious belief"—not in "purely secular" philosophical concerns.  *Id.; see Shakur v. Schriro*, 514 F.3d 878, 885 (9th Cir. 2008) (sincerity test set forth in *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) and *Callahan*, 658 F.2d at 683, determines the applicability of the Free Exercise Clause).

Even if a prison regulation impinges on an inmate's constitutional rights, the regulation is nevertheless valid if it is reasonably related to legitimate penological interests.  *Shakur*, 514 F.3d at 883-84 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  Under *Turner*, the court must balance four factors to determine whether a prison regulation is reasonably related to legitimate penological

interests: (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interests put forward to justify the regulation; (2) whether prisoners retain "alternative means of exercising the right" at issue; (3) the impact the requested accommodation will have upon inmates, prison staff and the allocation of prison resources generally; and (4) whether there are easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests. *See Shaw v. Murphy*, 532 U.S. 223, 229 (2001); *Turner,* 482 U.S. at 89-91. In evaluating a free exercise claim, courts must give appropriate deference to prison officials, *O'Lone*, 482 U.S. at 349, because "the judiciary is 'ill-equipped' to deal with the difficult and delicate problems of prison management." *Thornburgh v. Abbot*, 490 U.S. 401, 407-08 (1989) (citation omitted).

With respect to RLUIPA, that statute provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Thus, RLUIPA mandates a stricter standard of review for prison regulations that burden the free exercise of religion than the reasonableness standard articulated in *Turner*. *Greene v. Solano County Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (citations omitted).

To establish a RLUIPA violation, the plaintiff bears the initial burden of proving that the defendants' conduct imposed a "substantial burden" on his "religious exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). Once the plaintiff establishes a substantial burden on his religious exercise, defendants must prove that the burden both furthers a compelling governmental interest and is the least restrictive means of achieving

that interest. *Id.* at 995. The Ninth Circuit has set out four factors for the RLUIPA analysis: (1) what "exercise of religion" is at issue; (2) what "burden," if any, is imposed on that exercise of religion; (3) if there is a burden, whether it is "substantial;" and (4) if there is a "substantial burden," whether it is justified by a compelling governmental interest and is the least restrictive means of furthering that compelling interest. *Navajo Nation v. U.S. Forest Serv.*, 479 F.3d 1024, 1033 (9th Cir. 2007), *aff'd en banc*, 535 F.3d 1058, 1068 (9th Cir. 2008).

Although RLUIPA does not define what constitutes a "substantial burden" on religious exercise, the burden must be more than a mere inconvenience. *Navajo Nation*, 479 F.3d at 1033 (internal quotations and citations omitted). The Ninth Circuit has stated that a substantial burden is one that is "'oppressive' to a 'significantly great' extent." "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier*, 418 F.3d at 995 (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). The burden must prevent the plaintiff "from engaging in [religious] conduct or having a religious experience." *See Navajo Nation*, 479 F.3d at 1033 (internal citations omitted). In addition, a substantial burden exists when the state, "denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008) (quoting *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981) (internal quotations omitted)).

RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Although RLUIPA "bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion . . . the

Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Cutter v. Wilkenson*, 544 U.S. 706, 725 n.13 (2005).

Here, defendants state that the books were confiscated as contraband and that the prison requires inmates to write their names in their books as part of the ESP policy of keeping contraband from prisoners and limiting an inmate's personal property to that which he rightfully owns (#23, pp. 7-8). They contend that such policy serves the legitimate penological purpose of reducing theft and the trading of property for services within the prison and does not unconstitutionally infringe on plaintiff's First Amendment right to free exercise of religion (#23, pp. 7-8). They further assert that such policy does not violate plaintiff's religious exercise rights under RLUIPA because it serves a compelling government interest and does not restrict inmates' religious rights.

Here, no factual dispute exists; plaintiff acknowledges that his name was not in the books. The court finds that the contraband policy reasonably serves a legitimate penological interest under *Turner*. Clearly, (1) there is a valid, rational connection between rules requiring inmates to write their names in their books and forbidding possession of other inmates' books and the interest of preventing theft and the trading of property for services; (2) prisoners may exercise their rights to practice their religions by using religious books they own as well as any religious materials available to all prisoners at ESP; and as to (3) and (4) plaintiff has not requested accommodation other than the return of the contraband and has identified no easy alternatives to put in place.

Similarly, pursuant to RLUIPA, not only is it common sense that the governmental interest in controlling theft and inmates' possession of unauthorized property at ESP is strong, but the requirement that inmates write their names in the books they own cannot be said to be anything more than a mere inconvenience, and thus does not impose a "substantial burden" on plaintiff's religious exercise rights. *Navajo Nation*, 479 F.3d at 1033.

Accordingly, as no genuine issue of material fact exists and defendants are entitled to judgment as a matter of law, summary judgment should be granted in defendants' favor with respect to plaintiff's First (religious liberty) and Fourteenth Amendment and RLUIPA claims against Rigney in count III.

**First Amendment Right to Access to Courts**

Plaintiff also contends in count III that Rigney confiscated legal books that he needed to (1) "finish" his direct appeal in his state criminal case C200752X; (2) defend against a motion for summary judgment in a federal civil rights case 2-09-cv-02158-KJD-LRL; and (3) file an appeal in a federal habeas corpus case 2:07-cv-01312-JCM-GWF (#6, p. 6B). Defendants argue that plaintiff only offers the bare assertion that his claims in these cases were frustrated, with no evidence (#23, p. 9).

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *limited in part on other grounds by Lewis*, 518 U.S. at 354. Courts traditionally differentiate between two types of access to court claims: those involving a prisoner's right to *affirmative assistance* and those involving a prisoner's right to litigate *without active interference*. *Silva v. DiVittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011).

With respect to a prisoner's right to affirmative assistance, the United States Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828; *see also Lewis*, 518 U.S. at 355; *Wolff v. McDonnell*, 418 U.S. 539, 579-80 (1974); *Johnson v. Avery*, 393 U.S. 483, 490 (1969). However, the right to litigation assistance is limited to the right to bring a direct criminal appeal, a habeas corpus petition, or a civil rights complaint. *See Lewis*, 518

U.S. at 354-55; *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995). "[T]he [U.S.] Supreme Court has clearly stated that the constitutional right of access requires a state to provide a law library or legal assistance only during the pleading stage of a *habeas* or civil rights action."[5] *Cornett*, 51 F.3d at 898-99.

With respect to a prisoner's right to litigate without active interference, the United States Supreme Court has held that "the First Amendment right to petition the government includes the right to file other civil actions in court that have a reasonable basis in law or fact." *Snyder v. Nolen*, 380 F.3d 279, 290 (7th Cir. 2004) (citing *McDonald v. Smith*, 472 U.S. 479, 484 (1985)). This right does not require prison officials to provide affirmative assistance in the preparation of legal papers, but rather forbids states from "erect[ing] barriers that impede the right of access of incarcerated persons." *DiVittorio*, 658 F.3d at 1102 (citing *John L. v. Adams*, 969 F.2d 228, 235 (6th Cir. 1992)). Thus, aside from a prisoner's affirmative right to access the tools necessary to challenge his sentence or the conditions of his confinement, prisoners also have the right "to pursue legal redress for claims that have a reasonable basis in law or fact" without undue interference from the state. *Divittorio*, 658 F.3d at 1103 (citing *Snyder*, 380 F.3d at 291 (internal citation omitted)). This right extends beyond the pleading stages. *Divittorio*, 658 F.3d at 1103 (citations omitted) ("[U]nder the First Amendment, prisoners have the right to challenge their sentences or the conditions of their confinement to conclusion without active interference by prison officials.").

Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15

---

[5] The "pleading stage" includes the complaint and answer, but also the prisoner-plaintiff's "reply to an answer," his "reply to a counterclaim" and his "answer to a cross-claim." *Cornett*, 51 F.3d at 899. Thus the "pleading stage" encompasses the preparation of a complaint and the preparation of any filings necessary to "rebut the State's arguments when a court determines that a rebuttal would be of assistance." *Id.*

-16-

(2002). For backward-looking claims such as the claim at issue here, the prisoner-plaintiff must show: "1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007), *vacated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *see also Christopher*, 536 U.S. at 415. The prisoner-plaintiff must establish that he or she has suffered an actual injury—a jurisdictional requirement that flows from the standing doctrine and may not be waived. *Lewis*, 518 U.S. at 349 n.1 (citation omitted). Actual injury will exist only if a non-frivolous legal claim was frustrated or impeded. *See id*. at 353 n.3 ("Not everyone who can point to some 'concrete' act and is 'adverse' can call in the courts to examine the propriety of executive action, but only someone who has been *actually injured.* Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value—arguable claims are settled, bought, and sold. Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all . . .."); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008) (explaining that the failure to show that a non-frivolous legal claim has been frustrated is fatal to a claim for denial of access to the courts) (citation omitted)).

Here, defendants are correct that plaintiff does not elaborate on his claim that he needed the legal books that Rigney confiscated to pursue his direct appeal, other than to note that he needed his Georgetown Law Journal for that purpose (#6, p. 6B). Moreover, as discussed below with respect to plaintiff's more specific claim that Rowley's confiscation of legal materials frustrated plaintiff's ability to pursue his direct appeal, plaintiff cannot show actual injury.

With respect to his general, unelaborated claim that his ability to defend against a motion for summary judgment in another civil rights matter, the 2-09-cv-02158-KJD-LRL, was frustrated, the

court may take judicial notice of its docket, and defendants were not even served in that action until about eight months after the unspecified legal books were confiscated (2-09-cv-02158-KJD-LRL, #20). Defendants then filed a motion for summary judgment on June 30, 2011 and plaintiff filed his 19-page opposition on August 3, 2011. *Id*., #s 25, 33. Plaintiff has not alleged any specific difficulty in pursing that action, and the record does not reflect that his ability to file or oppose motions or generally pursue that case was hindered in any way. Finally, while plaintiff alleges, again without elaboration, that he was hindered in his ability to pursue his habeas corpus action, the court notes that there, respondents answered the petition on March 4, 2009, and plaintiff (petitioner) filed a traverse on March 19, 2009 (2:07-cv-01312-JCM-GWF, #s 30, 31). Accordingly, the matter was fully briefed long before Rigney confiscated legal books on November 4, 2010. The court then denied the petition in its entirety and entered judgment against petitioner on February 9, 2011. *Id*., #s 47, 48). The court notes finally that petitioner is now represented by counsel in his appeal to the Ninth Circuit. *Id*., *see* #56.

Accordingly, no genuine issue of material fact exists, and defendants should be granted summary judgment in their favor with respect to plaintiff's access to the courts claim in count III. And therefore, defendants' motion for summary judgment should be granted as to the entirety of count III.

### 3. Count VI

Plaintiff alleges that Rowley confiscated "legal papers" during a cell search, which frustrated his ability to pursue his direct appeal in Nevada Supreme Court case no. 56890 (#6, p. 6H). In his sworn declaration as well as in the unauthorized property form that he completed, Rowley states that on January 14, 2011, he and another officer searched plaintiff's cell (#23, Ex. B, Rowley Declaration, and Ex. D, unauthorized property form). The papers were in a laundry bag and were

being used for weight-lifting exercises, which is against NDOC policy. *Id*. Plaintiff states that the legal papers were returned to him on about February 13, 2011 (#34, p. 60).

      Defendants incorrectly argue that plaintiff actually filed his appeal on July 6, 2010, far before either incident of confiscation of legal books and legal materials that plaintiff alleges (#23, p. 9). However, as plaintiff points out, and as the record reflects, plaintiff filed his motion to withdraw guilty plea in state district court on July 6, 2010 (#23, Ex. H). When that motion was denied, plaintiff filed a Notice of Appeal, which, as plaintiff states, "listed the grounds," and then he alleges that he was unable to timely file his opening brief because Rowley seized his legal papers (#34, p. 59).

      This court may take judicial notice of the Nevada Supreme Court docket, which reflects that plaintiff filed his Notice of Appeal of the state district court's denial of his motion to withdraw guilty plea on September 27, 2010. (*Arrendondo v State*, Case No. 56890). The case was submitted for decision on November 18, 2010, which belies plaintiff's assertion that the January 2011 seizure of legal papers interfered with his ability to file his opening brief. Also, plaintiff acknowledges that all grounds for his appeal were set forth in the Notice of Appeal and thus were before the court. Moreover, after plaintiff's legal papers were returned in February 2011, the Nevada Supreme Court docket reflects that plaintiff filed several documents and motions on February 24-25, 2011. In the Nevada Supreme Court's March 17, 2011 order affirming the denial of plaintiff's motion to withdraw his guilty plea, the court specifically notes that it reviewed all documents that plaintiff submitted to the court and concluded that "no relief based on those submissions is warranted" (#23, Ex. H, p. 2, n.2). Accordingly, as plaintiff can show no actual injury, *Lewis*, 518 U.S. at 349 n.1, he cannot show that a genuine dispute of material fact exists, and defendants should be granted summary judgment on count VI.

### III.  CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendants are entitled to summary judgment in their favor, as there are no genuine issues of material fact for trial. Therefore, the court recommends that defendants' motion for summary judgment (#23) be **GRANTED** in its entirety.  The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#23) be **GRANTED**.

**DATED:** September 23, 2013.

_Valerie P. Cooke_

**UNITED STATES MAGISTRATE JUDGE**